IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BABY MERLIN COMPANY<br><br>                 Plaintiff,<br><br>vs.<br><br>CRIBCULTURE, LLC<br>ISAIAH BLACKBURN<br><br>                 Defendants. | Civil Action No. _____<br><br>**DEMAND FOR JURY TRIAL** |

## **COMPLAINT**

Plaintiff Baby Merlin Company ("Baby Merlin" or "Plaintiff") by counsel, brings this civil action seeking damages and injunctive relief against CribCulture, LLC and Isaiah Blackburn (collectively, "Defendants"). In support of this Complaint, Baby Merlin makes the following allegations based upon information or belief, except to allegations specially pertaining to itself, which are based on personal knowledge:

### **Nature of Case**

1. This is an action for Trademark Infringement, Unfair Competition, False Designation of Origin, False Advertising, and violation of Pennsylvania's Unfair Trade Practice And Consumer Protection Law.

### **PARTIES**

2. Baby Merlin is a Pennsylvania Corporation located at 101 Fellowship Road, Unit 242, Uwchland, PA 19480.

3. Defendant CribCulture, LLC is an Indiana limited liability company with a place of business at 5868 E. 71st Street, Suite E-560, Indianapolis, IN 46220.

4.     Defendant Isaiah Blackburn is listed as a Manager of this company and is domiciled at 222 E. Clear Lake Ln., Westfield, IN, 46074, USA.

## JURISIDICTION AND VENUE

5.     This action arises under the Lanham Trademark Act 15 U.S.C. §§ 1051 *et seq.* (the "Lanham Act"). This action also arises under principles of state common and statutory law. Accordingly, this Court has federal question jurisdiction over the subject matter of this action under 15 U.S.C. §§ 1121 (Jurisdiction of Federal Courts for Lanham Act); 28 U.S.C § 1331; and 28 U.S.C. § 1338. This Court has supplemental jurisdiction over related state law claims under 28 U.S.C. § 1367, because these claims form part of the same case or controversy.

6.     In addition, this Court has diversity jurisdiction over this action under 28 U.S.C. § 1332, because the parties are citizens of different states, and the amount in controversy is in excess of $75,000.

7.     This Court has personal jurisdiction over Defendants, in that they have engaged in, and continue to engage in, the transaction of business and the commission of trademark infringement, unfair competition and false advertisements involving Baby Merlin and other tortious acts in interstate commerce throughout the United States and in this judicial district, including the sale of infringing items in this judicial district. Defendants' business and acts have caused, and continue to cause, injury to Baby Merlin within the Commonwealth of Pennsylvania.

8.     Venue is proper in the Eastern District of Pennsylvania (the "District") under 28 U.S.C. § 1391, because Defendants conduct, transact and solicit business in the District, such that their contact with the District subjects them to personal jurisdiction

with respect to this action, and a substantial part of the events or omissions giving rise to Baby Merlin's claims, have occurred, and continue to occur, in the District causing damage to Baby Merlin in the District.

## **FACTS COMMON TO ALL COUNTS**

9.  In around 2002, Baby Merlin's founder(s) conceived/invented the first swaddle-transition-sleep-product and method of manufacturing the same in the world; generally referred to as the MAGIC SLEEPSUIT®.

10.  Baby Merlin's MAGIC SLEEPSUIT® swaddle-transition product is infant sleepwear worn by a baby for sleep only.  The product is designed to help babies between the approximate ages of three and nine months with the comfort they need to sleep better and longer, by helping to muffle babies' twitches and startle-type movements that can wake them prematurely, and by keeping them cozy and secure making it easier to go to sleep on their own, or fall back asleep if woken prematurely. The MAGIC SLEEPSUIT® product is designed to help babies transition from the swaddle.

11.  The MAGIC SLEEPSUIT® swaddle-transition product was designed and created by a mother and pediatric physical therapist who used her instincts as a mother and education and experience as a pediatric physical therapist to create the product to help her own babies sleep better and longer.  From this success with her own babies led to the creation of the Baby Merlin Company who began selling Baby Merlin's MAGIC SLEEPSUIT® product in 2008.

12.  Baby Merlin's MAGIC SLEEPSUIT® was the first product created for the "Swaddle Transition" niche.

13. Baby Merlin's MAGIC SLEEPSUIT® product also helps babies to sleep more soundly on their back — the recommended safe sleep position by the American Academy of Pediatrics (AAP) — without the aid of restraints, loose bedding or pillows.

14. Baby Merlin's MAGIC SLEEPSUIT® swaddle-transition product is used by and recommended by many sleep consultants, sleep experts, physicians, nurses, hospitals, day care centers, parents, and caregivers.

15. The MAGIC SLEEPSUIT® product has won numerous unsolicited awards including the following:

   a. Mom's Choice Award

   b. Bump Best of Baby Award

   c. iparenting Media Award

   d. Best of Baby List Award

   e. Red Tricycle Totally Awesome #snuggly Sleep Savior Award

   f. What to Expect Mom Must Have Sleep Helpers Finalist

   g. Gugu Guru's Baby Registry Must Have

16. Many caregivers refer to the MAGIC SLEEPSUIT® product as "MAGIC," because it transforms a sleep-deprived baby — that struggles to fall asleep on his or her back without a swaddle — into a baby that can fall asleep faster and sleep more soundly on his or her back. A baby that is able to sleep more soundly and for longer durations usually translates into a better-rested and happy baby. And a happy baby usually means a happy caregiver.

17. Baby Merlin is the owner of a valid and subsisting United States Trademark Registration No. 4,271,544 on the Principal Register in the United States

Patent and Trademark Office ("USPTO") for the MAGIC SLEEPSUIT® mark (hereinafter the "MAGIC SLEEPSUIT® Mark") for infant sleepwear, which has become incontestable within the meaning of Section 15 of the Lanham Act, 15 U.S.C. § 1065. Attached as Exhibit A is a true and correct copy of the registration certificate for Baby Merlin's U.S. Trademark Registration 4,271,544, which was issued by the USPTO January 2013.

18.    Baby Merlin is also the owner of a valid and subsisting United States Trademark Registration No. 3,486,179 on the Principal Register in the United States Patent and Trademark Office ("USPTO") for the THE MAGIC SLEEP SUIT® mark (hereinafter the "THE MAGIC SLEEP SUIT® Mark") for infant sleepwear, which has become incontestable within the meaning of Section 15 of the Lanham Act, 15 U.S.C. § 1065. Attached as Exhibit B is a true and correct copy of the registration certificate for Baby Merlin's U.S. Trademark Registration 3,486,179, which was issued by the USPTO August 2008.

19.    Baby Merlin is also the owner of a valid and subsisting United States Trademark Registration No. 5,006,620 on the Principal Register in the United States Patent and Trademark Office ("USPTO") for BABY MERLIN'S MAGIC SLEEPSUIT® design mark as depicted below (hereinafter the "MAGIC® (Logo)") for infant sleepwear. Attached as Exhibit C is a true and correct copy of the registration certificate for Baby Merlin's U.S. Trademark Registration 5,006,620 which was issued by the USPTO July 26, 2016.

 [the MAGIC® (Logo)].

20. Since at least as early 2008, Baby Merlin has continuously used its:

- MAGIC SLEEPSUIT® Mark;

- THE MAGIC SLEEP SUIT® Mark; and

- the MAGIC® (Logo)" (all collectively the "MAGIC SLEEPSUIT Marks") throughout the United States in interstate commerce, and internationally, all in connection with the manufacture, sale, distribution, offering for sale, sale, marketing, advertising, and promotion of infant sleepwear. Attached as Exhibit D are photographs of representative samples showing Baby Merlin's use of its Marks in connection with these goods and services.

21. As a result of its widespread, continuous and exclusive use of the MAGIC SLEEPSUIT Marks to identify Baby Merlin's goods and services, and Baby Merlin as their source, Baby Merlin owns valid and subsisting federal statutory and common law rights to these Marks.

22. The MAGIC SLEEPSUIT Marks are distinctive to both the consuming public and Baby Merlin's trade.

23. As of filing this complaint, Baby Merlin is the only company in the United States that owns a live registered trademark that includes the words SLEEPSUIT or SLEEP SUIT in any form.

24. For 10 years, Baby Merlin was the exclusive user of the word "SLEEPSUIT" in connection with "swaddle-transition products."

25. SLEEPSUIT has become distinctive to both the consuming public and Baby Merlin's trade in connection with swaddle-transition products and is associated exclusively with Baby Merlin in the realm of "swaddle-transition products."

26. Baby Merlin has expended substantial time, money and resources marketing, advertising, and promoting its goods and services sold under Baby Merlin's MAGIC SLEEPSUIT Marks through Baby Merlin's marketing, advertising, and promotional efforts, and channels for goods and services units its MAGIC SLEEPSUIT Marks.

27. During the period of 2008 up to the date of filing this Complaint, Baby Merlin has expended thousands of dollars on the marketing, advertising, and promotion of the goods/services sold under Baby Merlin's MAGIC SLEEPSUIT Marks.

28. Baby Merlin sells and advertises its products under its Baby Merlin's MAGIC SLEEPSUIT Marks through online and brick-and-motor retail outlets, including Amazon's® platform, Facebook, other social media outlets, and approved distributors.

29. Sales of Baby Merlin's swaddle transition products under Baby Merlin's MAGIC SLEEPSUIT Marks are substantial.

30. As a result of Baby Merlin's expenditures and efforts, Baby Merlin's MAGIC SLEEPSUIT Marks have come to signify the high quality of goods designed by

Baby Merlin's Marks, and acquired incalculable distinction, reputation, and goodwill belonging exclusively to Baby Merlin.

31.  Baby Merlin's Marks and goods offered thereunder have received significant unsolicited coverage in various media, including, but not limited to:

   a. People.com
   b. NY Magazine
   c. Huffington Post
   d. Bravo TV
   e. LA Mom's Magazine

32.  As a result of its distinctiveness and widespread use and promotion throughout the United States, Baby Merlin's MAGIC SLEEPSUIT Marks are famous in the realm swaddle-transition solutions within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), and became famous before the acts of Defendant alleged in this Complaint.

## Defendant's Unlawful Activities

33.  In around 2017, Defendants, or person(s) associated with Defendants, copied key-patented-design features of Baby Merlin's MAGIC SLEEPSUIT® swaddle-transition technology, and introduced a competing product.

34.  To unlawfully promote the launch of Defendants' product, Defendants began using Baby Merlin's MAGIC SLEEPSUIT Marks without Baby Merlin's authorization.

35.  For instance, Defendants have used and continue to use several of Baby Merlin's MAGIC SLEEPSUIT Marks, or similar marks that are likely to cause confusion

with Baby Merlin's MAGIC SLEEPSUIT Marks on Defendant's website, Amazon's® platform, and social media, without Baby Merlin's authorization or license.

36.     In one example, Defendants included a blog post on their website in which Defendants mention the "Baby Merlin Sleep Suit." The wording "Baby Merlin Sleep Suit" includes a metadata link on Defendants' website coded with Baby Merlin's website address. The use of the wording "Baby Merlin Sleep Suit" and a link embedded in Defendants' website trades off the over 10 years of good will built up in the industry by Baby Merlin in its products, tradename, and trademarks.

37.     Defendants' use Baby Merlin's tradename, wording and link is also used by Defendants to attract and misdirect potential customers intended for Baby Merlin's website to Defendants' website, such as when a customer performs a Google® or Bing® search for "Baby Merlin" or "Baby Merlin's SLEEP SUIT."

38.     In another example of unauthorized use of Baby Merlin's MAGIC SLEEPSUIT Marks, Defendants copied and displayed Baby Merlin's MAGIC® (Logo) on Amazon's platform and Defendants' website, in connection with swaddle-transition products.

39.     In another example of unauthorized use of Baby Merlin's MAGIC SLEEPSUIT Marks, Defendants used a photo of the Baby Merlin MAGIC SLEEPSUIT including the LOGO in a comparison labeled CRIBCULTURE vs "MAGIC".

40.     In still another example of unauthorized use of Baby Merlin's MAGIC SLEEPSUIT Marks, Defendants have used and continue to use the mark "SLEEPSUIT MAGIC" in connection with swaddle-transition products, which is similar to and likely to cause confusion with Baby Merlin's MAGIC SLEEPSUIT mark.

41. In yet another example of unauthorized use of Baby Merlin's MAGIC SLEEPSUIT Marks, Defendants have adopted and continue to use the term "MAGIC" when referring to CribCulture's product, which is confusingly similar to Baby Merlin's MAGIC SLEEPSUIT Marks. Both share the identical MAGIC wording in conjunction with "swaddle transition products."

42. In still another unauthorized use of Baby Merlin's MAGIC SLEEPSUIT Marks, Defendants have used and continue to use the word SLEEPSUIT in connection with swaddle-transition products, which is similar to and likely to cause confusion with Baby Merlin's MAGIC SLEEPSUIT Marks.

43. Defendants also use the word SLEEPSUIT on their packaging in a font size that is larger than any other writing on their packaging. For instance, below is a picture of Defendants' packaging.



44. Defendants' use of the word SLEEPSUIT is confusingly similar to Baby Merlin's MAGIC SLEEPSUIT Marks. Both share the identical "SLEEPSUIT" wording in conjunction with "swaddle transition products."

45. Defendants' blog on Defendants' website uses the "Baby Merlin Magic Sleepsuit" name to discuss how Defendants copied many features of Plaintiff's product.

Use of the "Baby Merlin Magic Sleepsuit" name is similar to and likely to cause confusion with Baby Merlin's MAGIC SLEEPSUIT Marks.

46. In still another example of unauthorized use of Baby Merlin's MAGIC SLEEPSUIT Marks or marks confusingly similar to Baby Merlin's, Defendants' Amazon review section includes a reference to their product on Amazon's platform as "Magic Merlin baby sleep suit v2.0," which is similar to and likely to cause confusion with Baby Merlin's MAGIC SLEEPSUIT Marks.

47. The "About the Product" section on Defendants' Amazon Platform listing includes a Shop & Compare statement that reads: "baby merlin magic sleepsuit merlin sleepsuit magic merlin sleepsuit merlins magic sleepsuit merlin sleep suit magic sleepsuit zipadee zip halo sleepsack swaddle baby sleep sack love to dream swaddle." This is an unauthorized use of Baby Merlin's MAGIC SLEEPSUIT Marks. The use of these marks as keywords in the search engine optimization on the Amazon Platform is designed to attract Baby Merlin customers to Defendants' product by piggybacking off of Baby Merlin's MAGIC SLEEPSUIT Marks, and goodwill, which is likely to cause confusion among potential customers of Baby Merlin, and damage Baby Merlin.

48. The swaddle-transition products marketed, advertised, promoted and sold under Defendants' use of infringing marks as noted above — including use of Baby Merlin's marks and tradename: "MAGIC," "SLEEPSUIT," "SLEEPSUIT MAGIC," "BABY MERLIN," "Magic Merlin baby sleep suit v2.0."and Baby Merlin's MAGIC® (Logo) and other variations (collectively the "Infringing Marks") — is unauthorized use of Baby Merlin's trademarks and tradename, and is in direct competition with Baby Merlin's Magic Sleepsuit swaddle-transition products.

49. Defendants have marketed, advertised, and promoted their swaddle-transition products under the Infringing Marks through the Internet, social media including Facebook, Instagram, the Defendant's website, and Amazon's® platform, the same promotional channels that overlap with Baby Merlin's, and to the same demographic of potential buyers.

50. Defendants have used language in their description of Defendants' product that is strikingly similar to that used by Baby Merlin in its product description on Baby Merlin's website and on Amazon's ® platform.

51. The goods offered under Defendants' Infringing Marks are believed to have several features that they consider to be improvements on Baby Merlin's Magic Sleepsuit, however, may in fact be a danger to the infants who wear Defendants' product.

52. For instance, Defendants' product includes a "pacifier" hole and holes for the buttons in which an infant's finger or hands can become caught, twisted, and/or strangulated.

53. The buttons on the front of Defendants' product can come loose or be pulled off and be ingested by a baby; creating a choking hazard. The backside of the buttons on Defendants' product may come in direct contact with the baby and are hard with the possibility of having sharp edges.

54. The alleged "adjustable" neck on Defendants' product can actually be buttoned too tightly around an infant's neck causing a potentially dangerous scenario.

55. Conversely, the alleged "adjustable neck" on the Defendants' product can also be opened too wide, thus allowing the infant to potentially wiggle out of the

Defendants' product during times when the infant is unsupervised creating a dangerous piece of loose bedding in the crib; something advised against by the American Academy of Pediatricians (AAP).

56. Defendants have falsely advertised and continue to falsely advertise that Defendants' swaddle-transition product is "patented". As of filing this complaint, Defendants' product is not patented in the United States.

57. Defendants have advertised and continue to advertise that Baby Merlin's product causes infants to "sleep hot." The statement is false and misleading.

58. Defendants have advertised and continue to advertise that their swaddle-transition product is "THE ONLY SLEEPSUIT THAT DOESN'T SLEEP HOT." The statement is false and misleading.

59. Defendants have advertised and continue to advertise that Defendants' swaddle-transition product is a new and improved product superior to Baby Merlin's product. The statement is false and misleading.

60. Defendants have advertised and continue to advertise that Defendants' product is superior to Baby Merlin's MAGIC SLEEPSUIT swaddle-transition product because it does not have a seam on the back that could create a ridge. Defendants seem to imply that this ridge is uncomfortable for the infant without data to support the claim. This claim is false and misleading.

61. Defendants falsely advertise that Baby Merlin's MAGIC SLEEPSUIT swaddle-transition product are limited to four "ventilation ports" to allow for air circulation that are actually closed when the baby is in the suit, which is a misrepresentation of fact, because Baby Merlin's MAGIC SLEEPSUIT swaddle-transition product's openings

for the hands and feet allow for heat dissipation and ventilation through the infant's hands and feet, a primary source of heat dissipation for humans. A fifth opening is the scooped neckline of Baby Merlin's Magic Sleepsuit swaddle-transition product, because heat is also dissipated through the head.

62. Defendants advertise that fleece on Baby Merlin's products makes it difficult to regulate the temperature of a baby. There is no lab, empirical or scientific evidence to support this claim and it is false and misleading.

63. The Defendants also advertise that they reimagined the suits to use a double layer of 100% jersey cotton, when in fact Baby Merlin's MAGIC SLEEPSUIT swaddle-transition product has been available in cotton in addition to fleece for many years. Defendants advertise that the use of cotton has allowed the Defendants to make the suits thicker, to reduce startle reflexes, but not hotter. Again, making reference in an advertisement that the Baby Merlin Magic Sleepsuit is hotter. These statements are false and misleading.

64. Defendants advertise that the Defendants' product is superior because their product can be dried in a dryer instead of air dried. In fact, Baby Merlin's swaddle-transition product can also be dried in the dryer, but Baby Merlin advises against this due to potential shrinkage. Thus again, making Defendants' advertisements that state that "our competitor's" product is inferior based on air drying, a false and misleading statement.

65. Defendants indicate that one of the most popular sleep aid products is the MAGIC SLEEPSUIT and that is was created 10 years ago to help transition from the swaddle. However, Defendants falsely advertise that the MAGIC SLEEPSUIT product

14

has remained unchanged for 10 years.  In fact, modifications have been made to the Magic Sleepsuit product since it was introduced 10 years ago.

66. Defendants have advertised and continue to advertise that the material used in their product is slightly weighted which creates an instant "bye-bye" reaction to the startle reflex. The advertisement is false and misleading because there is no scientific proof that Defendants' product has the ability to fully eliminate the startle reflex.

67. Defendants advertised and continue to advertise that their "patented" technology gives parents the ability to ventilate the sleepsuit when needed.  This is a false and misleading advertisement because Defendants' product is not patented.

68. Defendants have sponsored advertising on YouTube® through a video that disparages Baby Merlin's product by repeating many of the false-advertisement claims made by Defendants in the paragraphs above.

## COUNT I

## Trademark Infringement 15 U.S.C § 1125

69. Baby Merlin hereby adopts and incorporates by reference the allegations set forth in the preceding Paragraphs as though fully pleaded herein.

70. The complained of acts by Defendants constitute willful, deliberate and intentional infringement of Baby Merlin's federally registered marks in violation of §43(a) of the Lanham Act (15 U.S.C. § 1125(a)).

## COUNT II

## FEDERAL UNFAIR COMPETITION UNDER THE LANHAM ACT, 15 U.S.C. § 1125

71. Baby Merlin hereby adopts and incorporates by reference the allegations set forth in the preceding Paragraphs as though fully pleaded herein.

72. The aforementioned acts by Defendants constitute federal unfair competition in the form of passing-off, false representation, false advertising and false designation of origin, all in direct violation of 15 U.S.C. § 1125(a).

73. Defendants' aforementioned acts have benefited them.

74. By their actions, Defendants have irreparably injured Plaintiff. Such irreparable injury will continue unless Defendants are (a) restrained from further unauthorized use of Baby Merlin's Marks in connection with all business operations, and (b) preliminarily and permanently enjoined by this Court from further violation of Plaintiff's rights, for which Plaintiff has no adequate remedy at law.

75. As a result of Defendants' willful and malicious conduct, Plaintiff is entitled to recover the attorneys' fees and expenses it has incurred in bringing this action pursuant to 15 U.S.C. § 1117(a).

## COUNT III

## FALSE ADVERTISING UNDER THE LANHAM ACT, 15 U.S.C. § 1125

76. Baby Merlin hereby adopts and incorporates by reference the allegations set forth in the preceding Paragraphs as though fully pleaded herein.

77. Defendants' aforementioned acts constitute willful, deliberate and intentional false and misleading descriptions of fact, false and misleading

16

representations of fact, and false advertising in violation of §43(a) of the Lanham Act (15 U.S.C. §1125(a)).

## COUNT IV

## UNFAIR METHODS OF COMPETITION UNDER PENNSYLVANIA LAW

78. Baby Merlin hereby adopts and incorporates by reference the allegations set forth in the preceding Paragraphs as though fully pleaded herein.

79. The aforesaid acts constitute unfair methods of competition and unfair competition in the form of passing-off, false representation, false advertising and false designation of origin, all in direct violation of 73 P.S. § 201-2(4).

80. Defendants' aforementioned acts have benefited them.

81. By their actions, Defendants have irreparably injured Plaintiff. Such irreparable injury will continue unless Defendants are (a) restrained from further unauthorized use of Baby Merlin's Marks in connection with all business operations, and (b) preliminarily and permanently enjoined by this Court from further violation of Plaintiff's rights, for which Plaintiff has no adequate remedy at law.

82. As a result of Defendants willful and malicious conduct, which violates Pennsylvania's Unfair Trade Practices and Consumer Protection Law, Plaintiff is entitled to have all monetary damages it sustained trebled pursuant to 73 P.S. § 201-9.2.

## PRAYER FOR RELIEF

Plaintiff, Baby Merlin, prays for judgment as follows:

a) That judgment be entered in favor of Plaintiff on all causes of action set forth herein.

b) That Defendants, their officers, directors, principals, agents, servants, and all those in privity or acting in concert or participation with Defendants, and each and all of them, be preliminarily and permanently enjoined and restricted from directly or indirectly:

    i. using, in any manner, or holding themselves out as having rights to use, Baby Merlin's MAGIC SLEEPSUIT Marks, including describe or refer to or in conjunction with any swaddle-transition product using the words or marks "MAGIC," "SLEEPSUIT," "SLEEPSUIT MAGIC," "BABY MERLIN," and Baby Merlin's MAGIC® (Logo);

    ii. engaging in any course of conduct likely to cause confusion, deception or mistake, or injure Plaintiff's business reputation or dilute the Plaintiff's trademarks, or appropriate the good will and reputation of said Marks;

    iii. That the Court issue an Order directing Defendants to file with the Court and serve on Plaintiff, within thirty (30) days after the service on Defendants of such injunctions, a report in writing and under oath, setting forth in detail the manner and form in which Defendants have complied with the injunction.

c) That in accordance with Section 35 of the Lanham Act (15 U.S.C. §1117), Plaintiff be awarded monetary damages sufficient to recover:

    i. Defendants' improper profits;

    ii. all damage suffered by Plaintiff; and

    iii. the costs of this action.

d) That Plaintiff be awarded such other monetary damages, recovery and awards as appropriate under the law.

e) That the Court award Plaintiff punitive damages sufficient to deter Defendants from committing such willful acts of infringement in the future.

f) That the Court award Plaintiff attorney's fees and costs due to the exceptional nature of this case, pursuant to 15 U.S.C. §1117, 17 U.S.C. §505 and 73 P.S. §201-9.2.

g) That the Court require a full and complete accounting of all monies received by Defendants as a result of their misconduct.

h) For such other and further relief as the Court may deem just and proper.

## **Demand for Jury Trial**

Plaintiff, Baby Merlin Company respectfully asks for a jury trial on all damage issues raised by this Complaint.

Dated: August 3, 2018                              Respectfully submitted,

*[signature: Robert R. Axenfeld]*
_____
Robert R. Axenfeld, Esq.
**Axenfeld Law Group, LLC**
535 N. Church St., Suite 218
West Chester, PA 19380
(215) 422-3000
Lawyer ID No. 63343

*Attorneys for Plaintiff Baby Merlin Company*